## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LUTHER RICE COLLEGE AND SEMINARY**, | |
| *Plaintiff,* | |
| | |
| v. | Case No. |
| | |
| **LYNNE RILEY**, in her official capacity as President of the Georgia Student Finance Commission and Georgia Student Finance Authority; **ANNA CHAFIN, F. FAISON MIDDLETON, IV, LINDA MCWHORTER, LINWOOD H. THOMPSON, IV, DR. NARASIMHULU NEELAGARU, DAVID PEREZ, ED PEASE, DR. SARAH BECK HAWTHORNE, JAMES C. WEIDNER, A. MIDDLETON RAMSEY, JOHN LOUD, DON ANTHONY GRANTHAM, JR., RICHARD MANT, AND ROBERT GRIGSBY**, in their official capacities as board members of the Georgia Student Finance Commission and Georgia Student Finance Authority, | **VERIFIED COMPLAINT** |
| *Defendants.* | |

## INTRODUCTION

1. This civil-rights action seeks to prevent the government from forcing a Christian college to surrender its religious character, beliefs, and exercise to participate in Georgia's student aid programs just like other schools.

2. Georgia offers student financial aid programs to help Georgia students cover tuition costs for undergraduate degree programs at Georgia colleges and universities.

3. Georgia allows private colleges and universities to participate in such student aid programs. Indeed, the Georgia Assembly created one program to *encourage* Georgia students to attend private colleges and universities because "the four-year and graduate level institutions of the University System of Georgia are not equally available to citizens in certain areas of the state," Official Ga. Code ("O.G.C.") § 20-3-410(b), and funding students to attend private schools "reduce[s] the costs to the taxpayers of the state below the cost of providing similar instruction to such citizens within the university system," *id.* § 20-3-410(a).

4. But Georgia completely excludes some private colleges and universities from these programs because it deems them too religious.

5.     Specifically, Georgia excludes from the programs private schools that State officials consider a "school or college of theology or divinity."

6.     State officials insist that Luther Rice College and Seminary is one such school and have thus excluded the school from Georgia student aid programs.

7.     Luther Rice is a Christian, private, nonprofit college in Georgia that offers three undergraduate degree programs: an Associate of Arts in General Studies, a Bachelor of Arts in Psychology, and a Bachelor of Arts in Religion.

8.     Even though Luther Rice otherwise qualifies for Georgia student aid programs, Georgia officials excluded Luther Rice from the State's student aid programs because "most of [Luther Rice's] offerings [are] religious based and non-religious degrees [are] substantially intertwined with the school's religious mission."

9.     Georgia allows other religious schools—including schools with religious missions that offer religious undergraduate degree programs like Luther Rice—to participate in Georgia student aid programs. But Georgia excluded Luther Rice, making it the only excluded nonprofit school that is located in Georgia, is accredited by the Southern Association of Colleges and

Schools Commission on Colleges ("SACSCOC"), and awards undergraduate degrees and thus otherwise qualifies for the Georgia student aid programs.

10.    Because of that exclusion, no Luther Rice student can receive Georgia student aid for any undergraduate degree or course, not even for a course or degree in the school's general studies or psychology programs. And no Georgia high school student can receive dual credit at Luther Rice.

11.    If Luther Rice did not have a religious mission, offer religious degree programs, and teach all courses from a Christian worldview, its undergraduate students could receive Georgia student aid.

12.    So Luther Rice faces a choice between (a) maintaining its religious mission and degree programs and teaching all courses from a Christian worldview, or (b) giving up that religious character and exercise to participate equally with other schools in the State.

13.    Putting the school to that choice is unconstitutional.

14.    Many students who would like to attend Luther Rice need financial aid to attend the school. And many existing Luther Rice students would seek State financial aid if they could do so.

15.    Luther Rice's ability to attract and maintain students is essential to the school's overall health and growth, but its exclusion from Georgia

student aid programs inhibits its ability to successfully recruit and retain students.

16.    By denying the school participation in Georgia student aid programs because of its religious character, beliefs, and exercise, the State penalizes the school and its students based on their religion—discrimination that is "odious to our constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017).

17.    Luther Rice needs declaratory and injunctive relief to remedy this religious discrimination and to allow it to participate in Georgia student aid programs like other schools without sacrificing its religious character and exercise.

## JURISDICTION AND VENUE

18.    This action raises federal questions under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

19.    This Court has original jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

20.    This Court can grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 1343(3), 2201, and 2202 and Federal Rules of Civil Procedure 57 and 65.

21.    Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

22.    Plaintiff Luther Rice College and Seminary is a § 501(c)(3) nonprofit Christian college in Lithonia, Georgia.

23.    Defendant Lynne Riley is President of the Georgia Student Finance Commission ("GSFC" or "commission"). As President of the GSFC, Defendant Riley also serves as "the executive director or president ... and chief executive officer" of the Georgia Student Finance Authority ("GSFA" or "authority"). O.G.C. § 20-3-315. She is sued in her official capacity.

24.    Defendant Riley has the "authority and responsibility to implement and carry out all administrative powers, duties, and functions of the commission [and authority] in accordance with governing state and federal laws and rules, regulations, and policies prescribed by the board of commissioners." O.G.C. §§ 20-3-235(1), 20-3-315. She is also "authorized to select, employ, and terminate the employment of, and prescribe the duties of, all officers and employees of the commission in accordance with applicable provisions of law." *Id.* § 20-3-235(1).

25.    Defendants Anna Chafin, F. Faison Middleton, IV, Linda McWhorter, Linwood H. Thompson, IV, Dr. Narasimhulu Neelagaru, David Perez, Ed Pease, Dr. Sarah Beck Hawthorne, James C. Weidner, A. Middleton Ramsey, John Loud, Don Anthony Grantham, Jr., Richard Mant,

and Robert Grigsby are members of the GSFC's board of commissioners and the GSFA's board of directors ("Board"). They are sued in their official capacities.

26.     The Board governs the GSFC and GSFA. It exercises all GSFC and GSFA "powers," "duties," and "functions." O.G.C. §§ 20-3-234(a)(1), 20-3-236(a)(1).

27.     The GSFC and GSFA and its officials (collectively, "Defendants") are responsible for excluding Luther Rice from Georgia student aid programs as alleged below.

## STATEMENT OF FACTS

### A.     Luther Rice College and Seminary

28.     Luther Rice is a Christian school that offers undergraduate degree programs in psychology, general studies, and religion.

29.     Luther Rice's sole campus is in Lithonia, Georgia.

30.     Luther Rice is registered as a degree-granting institution with the Georgia Nonpublic Postsecondary Education Commission.

31.     Consistent with the school's Christian beliefs, Luther Rice's mission is to serve "the church and community" by "providing biblically based on-campus and distance education to Christian men and women."

32.    The school strives to prepare its students for both the marketplace and ministry.

33.    The school further "seek[s] to cultivate an institutional environment of Christian excellence through which vital core competencies and values are inculcated in each student."

34.    Luther Rice offers all programs and courses via distance learning (online) and some on-campus classes.

35.    Luther Rice teaches all courses from a Christian worldview.

36.    Luther Rice offers three undergraduate degree programs: an Associate of Arts in General Studies, a Bachelor of Arts in Psychology, and a Bachelor of Arts in Religion.

37.    Luther Rice students pursue a variety of careers in both the marketplace and ministry. Indeed, Luther Rice has a program called Ministry in the Marketplace that prepares students for the marketplace. The program includes a Ministry in the Marketplace Fund through which donors can devote money to helping Luther Rice develop its marketplace degree programs.

38.    Luther Rice exercises its beliefs through its religious mission and degrees and by teaching all courses from a Christian worldview.

39.     In 2024, Best Value Schools ranked Luther Rice as the second-best Christian college in Georgia.

40.     Luther Rice is accredited by SACSCOC and the Commission on Accreditation of the Association for Biblical Higher Education to award associate, baccalaureate, masters, and doctorate degrees and certificates. It is also a member of the Transnational Association of Christian Colleges and Schools.

41.     For the 2023-2024 academic year, Luther Rice had 757 total students with 269 undergraduate students. Of those undergraduate students, 157 were Georgia residents, 66% of whom were minority students.

42.     For the 2024-2025 academic year, tuition per credit hour for undergraduate degree programs at Luther Rice is $410.00 and the undergraduate fees per class is $185.00.

43.     Luther Rice students rely heavily on financial assistance to cover their tuition costs.

44.     Luther Rice participates in Title IV federal student financial aid programs.

45.     Of Luther Rice's current undergraduate students, 59.4% are eligible for federal student financial aid.

46.    While Luther Rice students can receive federal financial assistance, many of the school's undergraduate students also need and would rely on State financial aid to cover their tuition costs.

47.    But no undergraduate Luther Rice students receive State financial aid because Defendants have excluded Luther Rice from Georgia student aid programs.

**B.    The Georgia Student Finance Commission and Student Finance Authority**

48.    The GSFC is a Georgia executive branch agency created to "help improve the higher educational opportunities of citizens and persons in [Georgia]." O.G.C. § 20-3-231(b).

49.    The GSFC has the power to "receive all moneys made available to the commission by the General Assembly or otherwise for purposes of the commission and use such moneys for purposes of the commission [and authority]" and "[t]o adopt rules and regulations necessary or appropriate for the administration of its affairs; the exercise of its powers, duties, and functions; and the accomplishment of its purposes." O.G.C. § 20-3-236.

50.    The GSFA "is a public authority that exists for the purpose of providing educational scholarship, grant, and loan assistance to citizens and persons in [Georgia]." O.G.C. § 20-3-231; *see also id.* § 20-3-311.

51.    The GSFA has the power to "establish and administer each [Georgia] student assistance program"; "[t]o adopt rules, regulations, and policies necessary, appropriate, or convenient for the administration of its affairs; the execution of its powers, duties, and functions; and the accomplishment of its corporate purposes"; and "[t]o receive all moneys made available by the General Assembly or otherwise for the purposes of the authority and to use such moneys in accordance with [applicable statutes]." O.G.C. § 20-3-316.

52.    Defendants are responsible for carrying out these powers and duties of the GSFC and GSFA. Defendants are also responsible for the actions of all GSFC and GSFA officials.

53.    Defendants determine what schools meet the statutory requirements to become approved schools for Georgia student aid programs.

**C.    Overview of Georgia student aid programs**

54.    Defendants administer State-funded student financial aid programs for undergraduate Georgia students attending postsecondary educational institutions in Georgia. Such programs include the Georgia Tuition Equalization Grant, HOPE Scholarship, Zell Miller Scholarship, Dual Enrollment, and HERO Scholarship programs.

11

55.    Luther Rice would seek to participate in each of those programs if the State allowed it to do so. But Luther Rice cannot participate in any of the programs because Defendants denied Luther Rice's application to participate in the programs due to its religious character and exercise.

### 1.    Georgia Tuition Equalization Grant Program

56.    The Georgia Tuition Equalization Grant program encourages Georgia residents to attend eligible private colleges in Georgia by providing assistance towards educational costs. A true and correct copy of the 2024–2025 Tuition Equalization Grant Program Regulations is attached as Exhibit 1.

57.    The Georgia Assembly created the Tuition Equalization Grant program beginning with the 1972-1973 academic year after finding that (1) "the facilities of accredited independent colleges and universities located within the state can be used more effectively in the public interest by the grant of financial assistance to citizens who choose to attend such colleges and universities and that the provision of such assistance will reduce the costs to the taxpayers of the state below the cost of providing similar instruction to such citizens within the university system," O.G.C. § 20-3-410(a), and (2) "the four-year and graduate level institutions of the University System of Georgia are not equally available to citizens in certain

areas of the state" "because of their location within the state," *id*. § 20-3-410(b).

58.    State revenues fund the Tuition Equalization Grant program as authorized each year by the Georgia General Assembly.

59.    The GSFA administers the Tuition Equalization Grant program.

60.    The program provides "tuition equalization grants to all Georgia students attending approved schools ... whenever sufficient funds are available to the state." O.G.C. § 20-3-412.

61.    Under the program, students who are enrolled full-time at an approved school can receive $550 per semester or $367 per quarter for the 2024-2025 academic year.

62.    Grant recipients may receive payments for three semesters or four quarters per year.

**2.    HOPE and Zell Miller Scholarship Programs**

63.    Georgia's HOPE and Zell Miller Scholarship programs are merit-based scholarship programs that seek "to encourage the academic achievement of Georgia's high school students and Georgians seeking Degrees from postsecondary institutions located in Georgia." A true and correct copy of the 2024–2025 HOPE Scholarship Program at Private Institutions Regulations is attached as Exhibit 2. A true and correct copy of

the 2024–2025 Zell Miller Scholarship Program at Public and Private Institutions Regulations is attached as Exhibit 3.

64.    The programs provide a portion of the tuition cost at approved schools to Georgia residents who have demonstrated academic achievement by meeting specific academic and grade point average eligibility requirements.

65.    The Georgia Assembly created the HOPE Scholarship program beginning with the 1996-1997 academic year.

66.    The Georgia Assembly created the Zell Miller Scholarship program beginning with the 2011-2012 academic year.

67.    The Georgia Lottery for Education fully funds the HOPE and Zell Miller Scholarship programs.

68.    The GSFC administers the HOPE and Zell Miller Scholarship programs.

69.    HOPE Scholarship recipients who are enrolled full-time at an approved school may receive $2,496.00 per semester or $1,664.00 per quarter for the 2024-2025 academic year.

70.    Zell Miller Scholarship recipients who are enrolled full-time at an approved school may receive $2,985.00 per semester or $2,034.00 per quarter for the 2024-2025 academic year.

71.    HOPE and Zell Miller Scholarship recipients may receive payments for three semesters or four quarters each academic year.

### 3.    Dual Enrollment Program

72.    Georgia's Dual Enrollment program provides students enrolled at an eligible public or private high school or home study program in Georgia the opportunity to earn high school and college credit at approved schools. A true and correct copy of the 2024–2025 Dual Enrollment Program Regulations is attached as Exhibit 4.

73.    The program seeks "to promote and increase access to postsecondary educational opportunities for Georgia high school students while increasing high school graduation rates, preparing a skilled workforce, and decreasing time and cost to postsecondary credential completion." O.G.C. § 20-2-161.3(a.1).

74.    It offers students the opportunity to experience college courses and begin their college academic career while still in high school and provides for standard tuition, mandatory fees, and required books.

75.    The program covers costs for courses in English, math, science, social studies, and world languages and career, technical, and agricultural education.

76.    State revenues provide funding for the Dual Enrollment program.

15

77.    The GSFC administers the Dual Enrollment program.

78.    The GSFC annually publishes the rates it will pay for tuition, fees, and books at approved schools for the Dual Enrollment program. The rates vary based on course type, course delivery site, institution sector, and term of enrollment.

### 4.    HERO Scholarship Program

79.    The Georgia HERO (Helping Educate Reservists and their Offspring) Scholarship program provides "financial aid to qualifying Georgia National Guard or United States Military Reservists, their spouses, and dependent children who seek a postsecondary education." A true and correct copy of the 2024–2025 HERO Scholarship Program Regulations is attached as Exhibit 5.

80.    HERO Scholarship recipients may receive up to $2,000 per academic year.

81.    The Georgia General Assembly created the HERO Scholarship program beginning with the 2005-2006 academic year.

82.    State appropriations fund the HERO Scholarship program.

83.    The GSFA administers the HERO Scholarship program.

### 5.    Approved schools for Georgia student aid programs

84.    A postsecondary educational institution may apply to become an approved school for Georgia student aid programs, and GSFC and GSFA officials will review the application and render a determination of eligibility.

85.    If a school becomes an approved school, it may participate in any number of Georgia student aid programs.

86.    Schools must meet certain statutory requirements to become approved for Georgia student aid programs, including the Tuition Equalization Grant, HOPE Scholarship, Zell Miller Scholarship, Dual Enrollment, and HERO Scholarship programs.

87.    For a private nonprofit school like Luther Rice, the statutory requirements to become an approved school include that the school:

- Is a SACSCOC accredited/candidate school (or has been an approved for-profit college within the past five years, or a SACSCOC accredited school within the last seven years);
- Has a physical location in Georgia; and
- **_Is not a graduate level school or college of theology or divinity_**.

O.C.G.A. §§ 20-3-411(2)(A), 20-3-519(7)(C), 20-2-161.3(b)(10); 20-3-485(1) (emphasis added).

88.    Georgia statutes do not define "graduate level school or college of theology or divinity."

89.    Private nonprofit colleges or universities can thus participate in Georgia student aid programs.

90.    But private nonprofit schools that Defendants determine to be a "graduate level school or college of theology or divinity" cannot participate in any Georgia student aid programs ("Georgia student aid religious exclusion").

**D.    Luther Rice seeks to participate in Georgia student aid programs.**

91.    In 2020, Luther Rice asked a GSFC official if Luther Rice was eligible for Georgia student aid programs. The official responded that Luther Rice was not eligible because the school's sole undergraduate degree program at that time was a Bachelor of Arts in Religion. A true and correct copy of this response is copied in the email attached as Exhibit 6.

92.    Since that time, Luther Rice has launched two new undergraduate degree programs: an Associate of Arts in General Studies and a Bachelor of Arts in Psychology.

93.    But despite the addition of those programs, Defendants still consider Luther Rice too religious to participate.

94.    In September 2022, Luther Rice formally applied to become an approved school for Georgia student aid so that its undergraduate students may use the various State student aid programs to cover tuition costs and

high school students can take dual credit courses at Luther Rice. A true and correct copy of Luther Rice's application is attached as Exhibit 7.

95.    But Defendants denied Luther Rice's application solely because of the school's religious character and exercise.

96.    Over 8 months after Luther Rice submitted its application, Stephen DeBaun, General Counsel of the GSFC, sent Luther Rice a letter asserting that Defendants had denied Luther Rice's application because "the institution as a whole is considered a 'school of theology or divinity' as used in the code."

97.    The letter explained that "[t]he Georgia Code does not permit institutions of higher learning to participate in state scholarships and grants to the extent the school is a 'school or college of theology or divinity'" and that "[a]lthough Luther Rice has added degrees in non-religious studies, we find this insufficient to meet the statutory definition of eligible postsecondary institution as most of its offerings remain religious based and non-religious degrees remain substantially intertwined with the school's religious mission." A true and correct copy of this letter is attached as Exhibit 8.

98.    Two days after receiving that denial letter, Steven Steinhilber, President of Luther Rice, sent a response letter, asking Defendants to

reconsider the denial. A true and correct copy of this letter is included in Exhibit 9.

99.    Two days later, Mr. DeBaun simply confirmed receipt of that letter. About a month later, Mr. Steinhilber followed up via email, noting that Luther Rice's "next Board of Trustees meeting is approaching and this issue will be on the agenda." True and correct copies of these emails are included in Exhibit 9.

100.    Mr. DeBaun responded with a letter that simply confirmed that "the determination in the original letter reflects the agency's final determination as to how the law applies to Luther Rice." A true and correct copy of this letter is included in Exhibit 9.

101.    Mr. Steinhilber then asked "for some guidance for [Luther Rice] moving forward" and "direction on what [the school] can do as an institution to gain eligibility in the future."

102.    After receiving no response, Mr. Steinhilber emailed Pennie Strong, the GSFC Vice President of Program Administration. He explained that Luther Rice's "Board reaffirmed that they would like direction on what [Luther Rice] can do as an institution to gain eligibility in the future" and asked if Ms. Strong would be available by phone or in person to discuss further. When he did not hear back, Mr. Steinhilber left Ms. Strong a

voicemail and sent two follow up emails. True and correct copies of these emails are included in Exhibit 9.

103.    Mr. Steinhilber never received a response.

104.    In January 2024, Mr. Steinhilber sent a letter to Defendant Riley asking for a response to the school's repeated requests for more information on why Defendants excluded Luther Rice and how the school can gain eligibility. A true and correct copy of this letter is included in Exhibit 9.

105.    Defendant Riley responded via a phone call. In a brief conversation, she asserted that Defendants' determination was final.

106.    After Defendants refused to reconsider their denial of Luther Rice's application, Luther Rice proposed that the Georgia Assembly define "school of theology or divinity" as a school that solely awards religious degrees. But such legislative efforts were not successful.

107.    Luther Rice remains excluded from all Georgia student aid programs.

108.    Luther Rice is the only school that is located in Georgia, is accredited by SACSCOC, and awards undergraduate degrees that is not an approved school for Georgia student aid programs.

109.    Luther Rice meets all other requirements for approved schools for Georgia student aid programs.

110.    The sole reason that Defendants denied Luther Rice's application was because Defendants consider Luther Rice a "school or college of theology or divinity" due to the school's religious mission, religious degrees, and courses taught through a Christian worldview.

111.    While other religious schools participate in Georgia student aid programs, even schools with religious missions that offer religious undergraduate degrees like Luther Rice, the State deemed Luther Rice too religious for approval.

112.    For example, Truett McConnell University, Brewton-Parker College, Shorter University, Emmanuel University, and Toccoa Falls College are all Christian schools that have religious missions and award undergraduate religious degrees.[1] And they all participate in Georgia student aid programs, including the Tuition Equalization Grant, HOPE and Zell Miller Scholarship, Dual Enrollment, and HERO Scholarship programs.[2]

---

[1] Lists of degree programs at these schools can be found at: https://truett.edu/degrees/ (https://perma.cc/UV9M-ST4G); https://www.bpc.edu/resources/degree-completion-plans/#undergraduate (https://perma.cc/U5T5-83L9); https://www.shorter.edu/colleges-schools-departments/ (https://perma.cc/DZF5-Q63B); https://eu.edu/degrees-programs/ (https://perma.cc/467F-Q4WE); https://tfc.edu/academics/degrees-and-programs/#online-undergrad (https://perma.cc/L3UR-MSW6)

[2] Lists of schools participating in Georgia student aid programs can be found at: https://www.gafutures.org/media/xqrko20h/teg-eligible-institutions.pdf (https://perma.cc/2ZY2-4WEW); https://www.gafutures.org/media/o34pvdr1/hope-scholarship-eligible-institutions.pdf (https://perma.cc/CHP4-CDPE); https://www.gafutures.org/media/0ajnohsq/zell-miller-scholarship-eligible-institutions.pdf (https://perma.cc/X7WM-8PZV); https://www.gafutures.org/media/qk1b213x/dual-enrollment-eligible_institutions-02292024.pdf

22

113.   Even though Luther Rice teaches secular subjects and awards nonreligious degrees, the State still excluded the school and its students from all student aid programs because the school has a religious mission, awards religious degrees, and teaches all courses from a Christian worldview.

114.   Because of that exclusion, no Luther Rice student can participate in Georgia student aid programs, not even students seeking a degree in the school's general studies or psychology programs. And no Georgia high school student can take dual credit courses at Luther Rice through Georgia's Dual Enrollment program.

**E.    Luther Rice faces irreparable harm.**

115.   Because of Defendants' violation of Luther Rice's constitutional rights, as alleged below, Luther Rice cannot participate in Georgia student aid programs without giving up its religious character, exercise, and beliefs, resulting in irreparable harm for which there is no adequate remedy at law.

116.   Consistent with the school's religious beliefs, Luther Rice is, and intends to continue, operating as a Christian school with a religious mission, religious degree programs, and courses taught through a Christian worldview.

---

(https://perma.cc/97W2-LZPA); https://www.gafutures.org/media/xssigfhy/hero-eligible_institutions.pdf (https://perma.cc/A4RD-54J4)

117.   Luther Rice desires to become an approved school for all Georgia student aid programs.

118.   Current and prospective Luther Rice students need financial aid to attend Luther Rice.

119.   Current and prospective Luther Rice students are eligible for one or more Georgia student aid programs and would seek aid through the Georgia student aid programs if they could do so.

120.   Georgia high school students would take dual credit courses at Luther Rice if they could do so.

121.   But the State prohibits Luther Rice from participating in Georgia's student aid programs while maintaining its religious mission and degree programs and teaching all courses from a Christian worldview.

122.   Because Luther Rice has a religious mission, awards religious degree programs, and teaches all courses from a Christian worldview, Defendants excluded Luther Rice from Georgia student aid programs.

123.   Georgia's student aid religious exclusion thus encroaches on the school's religious beliefs and exercise, forcing it to alter its very character and purpose to participate in Georgia student aid programs.

124.   Luther Rice satisfies all other requirements for participating in Georgia student aid programs.

125.   The school has applied to participate in Georgia student aid programs and Defendants have denied its request.

126.   Defendants will not allow Luther Rice to participate in Georgia student aid programs unless the school agrees to forfeit its religious character, beliefs, and exercise by eliminating or diminishing its religious mission, religious degree programs, and the extent to which it teaches all courses from a Christian worldview.

127.   So Luther Rice faces a choice: (A) retain its religious mission, religious degree programs, and courses taught from a Christian worldview and be excluded from Georgia student aid programs, or (B) forgo its religious mission, religious degree programs, and courses taught from a Christian worldview and participate in Georgia student aid programs like other schools.

128.   Defendants force the school to decide between exercising its constitutionally protected rights and participating in a public benefits program like everyone else, causing it irreparable harm.

129.   As a result of its exclusion from Georgia student aid programs, the school's students also face a choice: (A) attend Luther Rice and forfeit State financial assistance, or (B) forgo attending Luther Rice and have school paid for by the State like everyone else.

130.   Georgia students who would otherwise pursue an undergraduate degree at Luther Rice have chosen and will choose not to attend the school because they cannot receive Georgia student aid to attend the school. And high school students who would like to take dual credit courses at Luther Rice have not been able to do so.

131.   Luther Rice is also placed at a competitive disadvantage by not being able to participate in Georgia student aid programs.

132.   Damages in the form of monetary reimbursement for tuition is an inadequate remedy because it fails to alleviate the constitutional harm of depriving the school and its students from participation in Georgia student aid programs altogether due to their religious character and exercise.

133.   Nor can monetary damages account for Luther Rice's loss of ministry opportunities caused by Defendants' actions.

134.   Accordingly, Luther Rice needs judicial relief declaring that it is unconstitutional for Defendants to require the school to give up its religious mission, religious degree programs, and courses taught from a Christian worldview to participate in Georgia student aid programs.

135.   Luther Rice also needs injunctive relief allowing the school to participate in student aid programs and prohibiting Defendants from denying financial assistance or otherwise penalizing the school for its religious

mission, religious degree programs, and courses taught from a Christian worldview.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### Violation of the Free Exercise Clause: Exclusion from Otherwise Available Government Benefits

136.   Luther Rice incorporates by reference paragraphs 1–135.

137.   Defendants cannot disqualify otherwise eligible schools from participating in Georgia student aid programs "solely because of their religious character," *Trinity Lutheran*, 582 U.S. at 462, nor "on the basis of their religious exercise," *Carson v. Makin*, 596 U.S. 767, 789 (2022).

138.   Georgia's student aid religious exclusion prohibits Luther Rice from participating in Georgia student aid programs because, consistent with the school's religious beliefs, it has a religious mission, awards religious degrees, and teaches all courses from a Christian worldview.

139.   Private colleges and universities—including certain religious schools—can participate in Georgia student aid programs. But Defendants excluded Luther Rice because of its religious character, beliefs, and exercise.

140.   Luther Rice's religious beliefs and exercise prevent it from complying with Georgia's student aid religious exclusion.

141.   The exclusion requires the school to abandon its religious character, beliefs, and exercise to participate in Georgia student aid programs.

142.   Because Georgia's student aid religious exclusion requires the school to forfeit its religious character, beliefs, and exercise to participate in Georgia student aid programs, it must satisfy strict scrutiny under the Free Exercise Clause.

143.   Georgia's student aid religious exclusion—and Defendants' decision to enforce it against Luther Rice—does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported compelling interest. It therefore violates the Free Exercise Clause of the First Amendment.

## SECOND CLAIM FOR RELIEF

### Violation of the Free Exercise Clause: Not Neutral or Generally Applicable

144.   Luther Rice incorporates by reference paragraphs 1–135.

145.   Luther Rice's sincerely held religious beliefs guide and permeate everything that it does.

146.   The school exercises its sincerely held religious beliefs by maintaining a religious mission, awarding religious degrees, and teaching all courses from a Christian worldview.

147.   Application of Georgia's student aid religious exclusion to Luther Rice substantially burdens the school's religious exercise.

148.   Georgia's student aid religious exclusion is not neutral or generally applicable because Georgia statutes do not define "graduate level school or college of theology or divinity" and thus create a system of individualized assessments that gives Defendants unfettered discretion to determine what schools constitute a "graduate level school or college of theology or divinity."

149.   Defendants allow other religious schools to participate in Georgia student aid programs, but not schools like Luther Rice that the State deems to be too religious. Indeed, Luther Rice is the only SACSCOC-accredited Georgia school with undergraduate degree programs that has been excluded from State student aid programs.

150.   Even though Luther Rice offers more secular than religious undergraduate degree programs, Defendants used their discretion to determine that Luther Rice constitutes a "school or college of theology or divinity."

151.   Georgia's student aid religious exclusion is not neutral or generally applicable because Defendants have the discretion to create individualized and categorical exceptions from student aid program requirements, which it has done for other schools.

152.   Defendants' enforcement of Georgia's student aid religious exclusion is not neutral or generally applicable because Defendants have denied requests for religious exemptions while giving them for other reasons.

153.   Georgia's student aid religious exclusion is not neutral and generally applicable because the practical "effect" of the exclusion is to exclude only those schools with religious beliefs and practices like Luther Rice's. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (the "effect" of the challenged law "in its real operation is strong evidence of its object").

154.   Because Georgia's student aid religious exclusion—and Defendants' decision to enforce it against the school—is not neutral or generally applicable, it must survive strict scrutiny.

155.   Georgia's student aid religious exclusion—and Defendants' decision to enforce it against Luther Rice—does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported

compelling interest. It therefore violates the Free Exercise Clause of the First Amendment.

## THIRD CLAIM FOR RELIEF

### Violation of the Religion Clauses: Religious Favoritism and Excessive Entanglement

156.   Luther Rice incorporates by reference paragraphs 1–135.

157.   "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). And "[t]his constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause." *Id.* at 245.

158.   Defendants favored certain religious organizations over others.

159.   Defendants allow other religious schools to participate in student aid programs, including those that have religious missions and offer religious undergraduate degree programs like Luther Rice.

160.   But because Defendants have deemed Luther Rice to be too religious, they have excluded the school from all Georgia student aid programs.

161.   Under the Establishment Clause, the State cannot "troll[] through a person's or institution's religious beliefs" as a condition to receiving government benefits. *Mitchell v. Helms*, 530 U.S. 793, 828 (2000).

162.   Defendants inquired into the religiousness of Luther Rice's mission, degree programs, and courses to determine if the school qualifies for Georgia student aid programs.

163.   Defendants' inquiry into Luther Rice's religiousness constituted "excessive entanglement" with the schools' religious views and exercise. *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979).

164.   Defendants' favoritism of some religious organizations over others and their inquiry into Luther Rice's religiousness triggered strict scrutiny under the Religion Clauses.

165.   Georgia's student aid religious exclusion—and Defendants' decision to enforce it against Luther Rice—does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported compelling interest. It therefore violates the Religion Clauses of the First Amendment.

## FOURTH CLAIM FOR RELIEF
## Violation of the Equal Protection Clause: Religious Discrimination

166.   Luther Rice incorporates by reference paragraphs 1–135.

167.  The Equal Protection Clause prohibits discrimination based on religion.

168.  The Equal Protection Clause prohibits Defendants from excluding Luther Rice from participating in Georgia student aid programs because of its religious status, character, beliefs, and exercise.

169.  Georgia's student aid religious exclusion prohibits Luther Rice from participating in Georgia student aid programs because it has a religious mission, awards religious degrees, and teaches all courses from a Christian worldview.

170.  Defendants thus ask the school to surrender its religious status, character, beliefs, and exercise to participate in Georgia student aid programs.

171.  Defendants treat Luther Rice less favorably than similarly situated schools because of its religious status, character, beliefs, and exercise.

172.  Enforcement of Georgia's student aid religious exclusion against the school must satisfy strict scrutiny because the disparate treatment is based on the school's fundamental rights: religious exercise and speech.

173.  Georgia's student aid religious exclusion—and Defendants' decision to enforce it against Luther Rice—does not serve a compelling

governmental interest and is not narrowly tailored to achieve any purported

compelling interest. It therefore violates the Equal Protection Clause of the

Fourteenth Amendment.

### FIFTH CLAIM FOR RELIEF

### Violation of the First Amendment: Free Speech and Expressive Association

174.   Luther Rice incorporates by reference paragraphs 1–135.

175.   The First Amendment to the United States Constitution protects

Luther Rice's right to speak and freely associate.

176.   Luther Rice engages in speech and expressive activity by

maintaining a religious mission and teaching a Christian worldview to

students.

177.   By prohibiting Luther Rice from participating in Georgia student

aid programs because of its religious mission and degrees and courses taught

through a Christian worldview, Georgia's student aid religious exclusion

restricts Luther Rice's speech based on its religious viewpoint and content,

singles out religious expression for discriminatory and unfavorable

treatment, restrains constitutionally protected speech before its expression,

and chills Luther Rice's speech.

178.   Defendants seek to force Luther Rice to alter its internal association and messages to participate in Georgia's student aid programs.

179.   By prohibiting Luther Rice from participating in Georgia student aid programs because of its religious character, beliefs, and exercise, Georgia's student aid religious exclusion burdens Luther Rice's speech and ability to associate with others and must satisfy strict scrutiny.

180.   Georgia's student aid religious exclusion—and Defendants' decision to enforce it against Luther Rice—does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported compelling interest. It therefore violates the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Luther Rice requests that this Court enter judgment against Defendants, and order the following relief:

A.  Declare that exclusion of Luther Rice from Georgia's student aid programs violates the Free Exercise Clause, Establishment Clause, Equal Protection Clause, and Free Speech Clause of the U.S. Constitution.

B.  Enter a preliminary and permanent injunction enjoining Defendants from enforcing the Georgia student aid religious exclusion against

Luther Rice or from otherwise excluding Luther Rice or limiting its

participation in Georgia student aid programs because of its religious

character and/or exercise, including the fact that it has a religious

mission, awards religious degrees, and teaches courses from a

Christian worldview.

C. Award costs and attorneys' fees.

D. Award nominal damages for violation of its constitutional rights.

E. Grant any other relief this Court deems equitable, just, and proper.

F. Retain jurisdiction of this matter as necessary for enforcing this Court's

orders.

Respectfully submitted this 15th day of October 2024,

s/ *David Cortman*
David Cortman
GA Bar No. 188810
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road, NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

Ryan Tucker*
AZ Bar No. 034382
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Email: rtucker@adflegal.org

Andrea Dill*
DC Bar No. 1719500
**ALLIANCE DEFENDING FREEDOM**
440 1st Street NW
Washington DC 20001
Telephone: (202) 393-8690
Email: adill@adflegal.org

***Counsel for Plaintiff***
*pro hac vice* application pending

## DECLARATION UNDER PENALTY OF PERJURY

I, Steven Steinhilber, in my official capacity as President of Luther Rice College and Seminary, declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing Verified Complaint and the factual allegations contained therein are true and correct to the best of my knowledge.

Executed on October 11, 2024, in _____Lithonia_____, Georgia.

_____
Dr. Steven Steinhilber
President of Luther Rice College and Seminary