# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LUTHER RICE COLLEGE AND SEMINARY**, <br><br><br> *Plaintiff,* <br><br><br> v. <br><br><br> **LYNNE RILEY**, in her official capacity as President of the Georgia Student Finance Commission and Georgia Student Finance Authority; **ANNA CHAFIN, F. FAISON MIDDLETON, IV, LINDA MCWHORTER, LINWOOD H. THOMPSON, IV, DR. NARASIMHULU NEELAGARU, DAVID PEREZ, ED PEASE, DR. SARAH BECK HAWTHORNE, JAMES C. WEIDNER, A. MIDDLETON RAMSEY, JOHN LOUD, DON ANTHONY GRANTHAM, JR., RICHARD MANT, AND ROBERT GRIGSBY**, in their official capacities as members of the Georgia Student Finance Commission and Georgia Student Finance Authority board of commissioners <br><br><br> *Defendants.* | Case No. 1:24-cv-04654-JPB <br><br><br><br> **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND .......................................................................... 2

    I.    Luther Rice and its Christian beliefs ............................................. 2

    II.    Georgia student aid programs ........................................................ 3

            A.    Tuition Equalization Grant Program ................................... 4

            B.    HOPE and Zell Miller Scholarship Programs ..................... 4

            C.    Dual Enrollment Program ................................................... 5

            D.    HERO Scholarship Program ................................................ 5

    III.    Defendants approve some religious schools but exclude disfavored ones. ................................................................................................ 6

    IV.    Defendants exclude Luther Rice. .................................................. 7

    V.    Luther Rice faces irreparable harm .............................................. 9

LEGAL STANDARD .................................................................................. 10

ARGUMENT .............................................................................................. 11

    I.    Luther Rice is likely to succeed on the merits of its claims. ....... 11

            A.    Defendants' actions trigger strict scrutiny under the Free Exercise Clause. ................................................................ 11

            B.    Defendants' actions further trigger strict scrutiny under both Religion Clauses. ....................................................... 17

            C.    Defendants fail strict scrutiny. ......................................... 20

    II.    Luther Rice satisfies the other preliminary injunction factors... 23

CONCLUSION ............................................................................................ 25

CERTIFICATE OF COMPLIANCE ............................................................ 27

CERTIFICATE OF SERVICE.............................................................................. 28

# TABLE OF AUTHORITIES

### Cases

*Carson v. Makin,*
    596 U.S. 767 (2022)............................................................................passim

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 U.S. 520 (1993) .................................................................. 15

*Colorado Christian University v. Weaver,*
    534 F.3d 1245 (10th Cir. 2008)........................................... 17, 18, 19, 22

*Espinoza v. Montana Department of Revenue,*
    591 U.S. 464 (2020) ........................................................... 12, 14

*Fellowship of Christian Athletes v. San Jose Unified School District Board of
    Education,*
    82 F.4th 664 (9th Cir. 2023) .................................................. 16

*FF Cosms. FL, Inc. v. City of Miami Beach,*
    866 F.3d 1290 (11th Cir. 2017)............................................. 23

*First National Bank of Boston v. Bellotti,*
    435 U.S. 765 (1978) .............................................................. 24

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021)............................................... 14, 15, 16, 17

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,*
    788 F.3d 1318 (11th Cir. 2015)............................................. 11

*Honeyfund.com Inc. v. Governor,*
    94 F.4th 1272 (11th Cir. 2024) ............................................. 24

*KH Outdoor, LLC v. City of Trussville,*
    458 F.3d 1261 (11th Cir. 2006)............................................. 23

*Larson v. Valente,*
    456 U.S. 228 (1982) .............................................................. 19

*Locke v. Davey,*
    540 U.S. 712 (2004) ........................................................ 21, 22

*Mitchell v. Helms,*
    530 U.S. 793 (2000) ........................................................ 17, 18

*New York v. Cathedral Academy,*
    434 U.S. 125 (1977) ........................................................ 18, 19

*NLRB v. Catholic Bishop of Chicago,*
    440 U.S. 490 (1979) ........................................................ 18, 19

*Otto v. City of Boca Raton, Florida,*
    981 F.3d 854 (11th Cir. 2020) ................................................. 24

*Scott v. Roberts,*
    612 F.3d 1279 (11th Cir. 2010) ................................................ 25

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    582 U.S. 449 (2017) ............................................... 12, 14, 21, 22

*Wood v. Raffensperger,*
    501 F. Supp. 3d 1310 (N.D. Ga.) ............................................. 11

*Wood v. Raffensperger,*
    981 F.3d 1307 (11th Cir. 2020) ............................................... 11

## Statutes

Official Ga. Code  § 20-3-410 ...................................................... 4, 23

Official Ga. Code § 20-2-161.3 ..................................................... 6, 7

Official Ga. Code § 20-3-231 ....................................................... 3, 23

Official Ga. Code § 20-3-311 ......................................................... 3

Official Ga. Code § 20-3-411 ......................................................... 6

Official Ga. Code § 20-3-485 ....................................................... 6, 7

Official Ga. Code § 20-3-519 ......................................................... 6

## INTRODUCTION

Luther Rice College and Seminary is a Christian nonprofit college in Georgia that has a Christ-centered mission, awards religious and secular degrees, and teaches all courses from a Christian worldview. But Georgia is demanding that Luther Rice abandon that religious character and exercise to participate in student aid programs.

Georgia offers student aid programs that help cover tuition costs for Georgia undergraduate students attending in-state colleges. Georgia allows private schools, including certain religious schools, to participate in such programs but it excludes schools that State officials deem "school[s] or college[s] of theology or divinity." And because no statute or regulation defines the term, State officials have unfettered discretion to determine whether an applicant constitutes such a school.

State officials say Luther Rice is one such school and have excluded it from Georgia student aid programs. When Luther Rice applied to participate in the programs, State officials claimed that the school was a "school of theology or divinity" because "most of its offerings [are] religious based and the non-religious degrees [are] substantially intertwined with the school's religious mission." Verified Complaint ("VC"), Ex. 8 at 2. In other words, the officials decided that Luther Rice was too religious to participate.

Even though Luther Rice meets all other requirements for Georgia student aid programs, State officials excluded the school based on its religious mission, degree programs, and courses. But under recent Supreme Court rulings, the State cannot exclude a private religious school from state funding solely based on the school's religious character and exercise. Nor can State officials target religious conduct for unfavorable treatment, weigh a school's religiosity when determining whether it qualifies for state benefits, or treat certain religious organizations more favorably than others.

State officials did all those things when they excluded Luther Rice from Georgia student aid programs and made Luther Rice the only excluded nonprofit school that otherwise meets the requirements for Georgia student aid programs. Because of that exclusion, no Luther Rice student can receive Georgia student aid for *any* course or degree program. And no Georgia high school student can take dual credit courses at Luther Rice. Luther Rice thus needs a preliminary injunction to stop this ongoing harm.

## FACTUAL BACKGROUND

### I.  Luther Rice and its Christian beliefs

Luther Rice is a Christian college in Georgia with three undergraduate degree programs: an Associate of Arts in General Studies, a Bachelor of Arts in Psychology, and a Bachelor of Arts in Religion. Decl. of Dr. Steven Steinhilber ("Steinhilber Decl.") ¶¶ 3, 10. The school's mission is to serve both

2

the church and community "by providing biblically based on-campus and distance education to Christian men and women" to prepare its students for the "ministry and the marketplace." *Id.* ¶ 6.

Luther Rice exercises its beliefs through its Christian mission and degree programs and by teaching all courses from a Christian worldview. *Id.* ¶ 13. And Luther Rice students choose to attend the school because it has a Christ-centered mission and worldview and offers degree programs that are accredited and offered online. *Id.* ¶ 16.

In the 2023-2024 academic year, Luther Rice had 269 undergraduate students. *Id.* ¶ 17. Of those undergraduate students, 157 were Georgia residents, 66% of whom were minority students. *Id.*

## II.    Georgia student aid programs

The Georgia Student Finance Commission ("GSFC") is a Georgia executive branch agency created to "help improve the higher educational opportunities of citizens and persons in [Georgia]." Official Ga. Code ("OGC") § 20-3-231(b). The Georgia Student Finance Authority ("GSFA") is a "public authority" that provides "educational scholarship, grant, and loan assistance to citizens and persons in [Georgia]." *Id.* §§ 20-3-231(a), 20-3-311(b).

The GSFC and GSFA and its officials (collectively, "Defendants" or "the State") administer State-funded student financial aid programs for Georgia undergraduate students attending Georgia colleges and universities. Such

programs include the Tuition Equalization Grant, HOPE Scholarship, Zell

Miller Scholarship, Dual Enrollment, and HERO Scholarship programs.

**A.    Tuition Equalization Grant Program**

The Tuition Equalization Grant program encourages Georgia residents

to attend private colleges in Georgia by "provid[ing] grant assistance towards

educational costs" at approved private schools. VC, Ex. 1 at 5, Regulation

602. The Georgia Assembly created the program after finding (1) that

covering tuition costs at private colleges and universities in Georgia "will

reduce the costs to the taxpayers of the state below the cost of providing

similar instruction to such citizens within the university system," OGC § 20-

3-410(a), and (2) that "the four-year and graduate level institutions of the

University System of Georgia are not equally available to citizens in certain

areas of the state," *id.* § 20-3-410(b).

For the 2024-2025 academic year, grant recipients receive up to $550

per semester or $367 per quarter. VC, Ex. 1 at 16, Regulation 608.1. They

may receive such payments for three semesters or four quarters each year.

*Id.*

**B.    HOPE and Zell Miller Scholarship Programs**

Georgia's HOPE and Zell Miller Scholarship programs are merit-based

scholarship programs that "encourage the academic achievement of Georgia's

high school students and Georgians seeking Degrees from postsecondary

4

institutions located in Georgia." VC, Ex. 2 at 6, Regulation 202; VC, Ex. 3 at 6, Regulation 4002. For the 2024-2025 academic year, HOPE Scholarship recipients receive up to $7,488 for the year. VC, Ex. 2 at 32, Regulation 208. And Zell Miller Scholarship recipients receive up to $8,955 for the year. VC, Ex. 3 at 32, Regulation 4008.2.

### C.    Dual Enrollment Program

Georgia's Dual Enrollment program allows Georgia high school students to earn high school and college credit at approved schools. VC, Ex. 4 at 5, Regulation 1602. The program offers students the opportunity to experience college courses and begin their college academic career while still in high school and covers costs for tuition, mandatory fees, and required books. *Id.* The program covers costs only for courses in English, math, science, social studies, and world languages and career, technical, and agricultural education. *Id.* at 13, Regulation 1606. The amounts covered vary based on course type, course delivery site, institution sector, and term length. *Id.* at 18, Regulation 1609.

### D.    HERO Scholarship Program

Georgia's HERO (Helping Educate Reservists and their Offspring) Scholarship program provides "financial aid to qualifying Georgia National Guard or United States Military Reservists, their spouses, and dependent

children who seek a postsecondary education." VC, Ex. 5 at 5, Regulation 802.

HERO scholarship recipients can receive up to $2,000 per year. *Id.*

Luther Rice would participate in all these programs if the State allowed

it to do so. Steinhilber Decl. ¶ 42.

### III.    Defendants approve some religious schools but exclude disfavored ones.

To participate in these programs, a college or university must become

an approved school.[1] VC, Ex. 7 at 1. Defendants determine which schools

become approved under applicable Georgia law. *Id.*

A private nonprofit college or university can become an approved school

for Georgia student aid programs. But a private nonprofit college or

university cannot become approved if Defendants determine that the school

is a "school or college of theology or divinity," a term undefined by any statute

or regulation ("student aid religious exclusion"). OGC §§ 20-3-519(7)(C), 20-3-

411(2)(A), 20-2-161.3 (b)(10), 20-3-485(1). So Defendants have unfettered

---

[1] For a private nonprofit school to become approved, Georgia statutes require
that the school: (1) is not a branch of the University System of Georgia; (2) is
not owned and operated by a state other than Georgia; (3) is a Southern
Association of Colleges and Schools Commission on Colleges ("SACSCOC")
accredited/candidate school (or has been an approved for-profit college within
the past five years, or a SACSCOC accredited school within the last seven
years); (4) has a physical location in Georgia; and (5) is not a graduate level
school or college of theology or divinity. OGC §§ 20-3-519(7)(C), 20-3-
411(2)(A), 20-2-161.3(b)(10), 20-3-485(1). Luther Rice meets the first four
requirements. Steinhilber Decl. ¶ 49. But according to Defendants, it does not
meet the final requirement.

discretion to assess a school's religiosity and judge whether it constitutes such a school.

Defendants do not wield this discretion equally. They have approved certain private nonprofit schools, including religious schools with religious missions that award religious undergraduate degrees. For example, Truett McConnell University, Brewton-Parker College, Shorter University, Emmanuel University, and Toccoa Falls College are all Christian schools that have religious missions and award undergraduate religious degrees. Steinhilber Decl. ¶ 45. And Defendants have approved them for Georgia student aid programs, including the Tuition Equalization Grant, HOPE Scholarship, Zell Miller Scholarship, Dual Enrollment, and HERO Scholarship programs. *Id.*

But Defendants rejected Luther Rice because they deemed it too religious.

## IV.    Defendants exclude Luther Rice.

Luther Rice sought to become an approved school for Georgia student aid programs so that its undergraduate students may benefit from Georgia student-aid programs and high school students can take dual credit courses at Luther Rice. Steinhilber Decl. ¶ 27. But Defendants denied Luther Rice's application only because they consider Luther Rice a "school of theology or divinity." *Id.* ¶ 28. Defendants justified that decision on the grounds that

"most" of the school's "offerings [are] religious based" and that the school's "non-religious degrees [are] substantially intertwined with the school's religious mission." *Id.* ¶ 30; VC, Ex. 8 at 2.

After receiving that denial, Luther Rice repeatedly asked Defendants to reconsider,[2] explaining that Luther Rice does not constitute a "school or college of theology or divinity" because it offers undergraduate degree programs in psychology and general studies in addition to religion. Steinhilber Decl. ¶¶ 31–38. And Luther Rice repeatedly asked Defendants for guidance on how the school could become approved. *Id.* But Defendants merely confirmed that their determination was final without providing any further explanation or guidance. *Id.*

So even though Luther Rice meets all other requirements for an approved school, Defendants found that the school is too religious to participate in Georgia student aid programs, making Luther Rice the only excluded nonprofit school that otherwise meets the requirements for Georgia student aid programs. *Id.* ¶ 41. Because of that exclusion, no undergraduate

---

[2] The school made its final request for reconsideration earlier this year in a letter to Defendant Lynne Riley, President of the GSFC and GSFA. Steinhilber Decl. ¶ 36. And Ms. Riley simply responded that Defendants' determination on Luther Rice's eligibility for Georgia student aid programs was final. *Id.* ¶ 37.

8

Luther Rice student can receive Georgia student aid for any course or degree program and no student can take dual credit courses at Luther Rice. *Id.* ¶ 40.

## V.    Luther Rice faces irreparable harm.

Consistent with the school's religious beliefs, Luther Rice is, and intends to continue, operating as a Christian college with a religious mission and degrees and courses taught from a Christian worldview. *Id.* ¶ 46. But because of that religious character and exercise, the State has excluded Luther Rice from otherwise available student aid, harming the school and Georgia students.

Defendants will not allow Luther Rice to participate in Georgia student aid programs unless the school eliminates or diminishes its religious mission, religious degree programs, and the extent to which it teaches all courses from a Christian worldview. So Luther Rice faces a choice: (A) give up that religious character and exercise and participate in Georgia student aid programs like other schools, or (B) retain that religious character and exercise and suffer exclusion from Georgia student aid programs.

Current and prospective Luther Rice students need financial aid to attend Luther Rice and would seek aid through Georgia student aid programs if they could do so. *Id.* ¶¶ 52–53; Decl. of Caleb Alexander ("Alexander Decl.") ¶ 19; Decl. of Michael Griffeth ("Griffeth Decl.") ¶¶ 6, 11; Decl. of Allison Artis ("Artis Decl.") ¶ 6. And Georgia students who would

otherwise seek undergraduate degrees at Luther Rice have chosen or will choose not to attend the school because they cannot receive Georgia student aid to do so. Steinhilber Decl. ¶¶ 54, 56; Griffeth Decl. ¶ 11. Indeed, current and prospective students have asked Luther Rice if the school participates in Georgia student aid programs and high school students have asked the school if it participates in Georgia's Dual Enrollment program. Steinhilber Decl. ¶ 56; Alexander Decl. ¶ 7; Griffeth Decl. ¶¶ 6, 11; Artis Decl. ¶ 13. But Luther Rice has had to inform these students that it has been excluded.

The exclusion has thus harmed Luther Rice and its students financially and has prevented Georgia students from attending their school of choice. Steinhilber Decl. ¶¶ 55, 61; Alexander Decl. ¶¶ 19, 21; Griffeth Decl. ¶¶ 6, 11; Artis Decl. ¶¶ 6, 15. It has also harmed Luther Rice's educational goals and caused the school to lose ministry opportunities. Steinhilber Decl. ¶¶ 59, 60.

To stop this ongoing harm, Luther Rice needs injunctive relief ordering Defendants to allow the school to participate in Georgia student aid programs and prohibiting Defendants from denying financial assistance or otherwise penalizing the school because Defendants deem the school too religious.

## LEGAL STANDARD

A party moving for a preliminary injunction must show: "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened

injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015). The likelihood of success is often "the determinative factor" in constitutional cases. *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1330 (N.D. Ga.), *aff'd*, 981 F.3d 1307 (11th Cir. 2020).

## ARGUMENT

### I. Luther Rice is likely to succeed on the merits of its claims.

Luther Rice is likely to succeed in showing that Defendants have violated the U.S. Constitution's Free Exercise and Establishment Clauses.

### A. Defendants' actions trigger strict scrutiny under the Free Exercise Clause.

Defendants' actions trigger strict scrutiny under the Free Exercise Clause in two ways: (1) by excluding Luther Rice from Georgia student aid programs solely because of the school's religious character and exercise and (2) by enforcing the student aid religious exclusion in a way that was not neutral or generally applicable.

### 1. Defendants excluded Luther Rice based solely on the school's religious character and exercise.

Under the First Amendment, the Supreme Court has "repeatedly held" that a state cannot "exclude[] religious observers from otherwise available public benefits" because of their "religious character" or "religious exercise."

11

*Carson v. Makin*, 596 U.S. 767, 780–81 (2022). Indeed, the Supreme Court has held as much three times within the last seven years.

First, in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), the Court held that Missouri's exclusion of churches from a grant program violated the Free Exercise Clause because it disqualified otherwise-eligible recipients "from a public benefit solely because of their religious character." *Id*. at 462. Such an exclusion, the Court explained, imposed a "penalty on the free exercise of religion that trigger[ed] the most exacting scrutiny." *Id*.

Second, in *Espinoza v. Montana Department of Revenue,* 591 U.S. 464 (2020), the Court struck down a Montana constitutional provision that barred religious schools from participating in a state scholarship program "solely because of the religious character of the schools." *Id*. at 476. The Court explained that when a state decides to "subsidize private education," it cannot then "disqualify some private schools solely because they are religious." *Id*. at 487.

Third, in *Carson*, the Court denied Maine's attempt to avoid the broad principles set out in *Trinity Lutheran* and *Espinoza*. In that case, Maine argued that it excluded private schools from its tuition assistance program based not on their religious *status* but their religious *activity*. Maine claimed that "a school is excluded only if it promotes a particular faith and presents

12

academic material through the lens of that faith." *Carson*, 596 U.S. at 787.

The Court rejected that argument, noting that the very reason religious

schools exist is to teach their faith. *Id*.

These "'unremarkable' principles" control here. *Id.* at 780. Georgia

cannot subsidize private postsecondary education but then exclude otherwise

eligible schools from such funding because of their religious character or

exercise. *Id*. at 779–80. Yet that is what Defendants have done in applying

the Georgia student aid religious exclusion. Defendants have allowed private

schools and even certain religious schools to participate in the program. But

Defendants excluded Luther Rice because they consider the school too

religious.

In applying the exclusion to Luther Rice, Defendants made clear that

they excluded the school because of its religious character and exercise. They

explained that the school cannot participate in Georgia student aid programs

because "most of [the school's] offerings [are] religious based and the non-

religious degrees [are] substantially intertwined with the school's religious

mission" and thus "the institution as a whole is considered a 'school of

theology or divinity.'" Steinhilber Decl. ¶ 30; VC, Ex. 8 at 2.

So just like the states did in *Trinity Lutheran*, *Carson*, and *Espinoza*,

Defendants have excluded Luther Rice from "an otherwise generally

available public benefit program, for which it is fully qualified" solely because

of the school's religious character and exercise. *Trinity Lutheran*, 582 U.S. at 466; *see also Espinoza,* 591 U.S. at 476; *Carson*, 596 U.S. at 789. Defendants will not allow Luther Rice to participate in Georgia student aid programs unless the school eliminates or diminishes its religious mission, religious degree programs, and courses taught from a Christian worldview.

Defendants have thus put the school to an unconstitutional choice: it can participate in Georgia student aid programs or maintain its religious character and exercise, but not both. If it elects the latter, its "freedom [of religion] comes at the cost of automatic and absolute exclusion from the benefits of a public program for which the [school] is otherwise fully qualified." *Trinity Lutheran*, 582 U.S. at 462. By forcing the school to decide between faith or funding, Defendants "penalize[] the free exercise of religion" and engage in religious discrimination that is "odious to our Constitution." *Carson*, 596 U.S. at 779–80 (quoting *Trinity Lutheran*, 582 U.S. at 467) (cleaned up).

### 2.    Defendants' application of the Georgia student aid religious exclusion is not neutral or generally applicable.

Defendants' actions trigger strict scrutiny under the Free Exercise Clause in another way: the Georgia student aid religious exclusion and its enforcement are neither neutral nor generally applicable. *Fulton v. City of Phila.*, 593 U.S. 522, 533–34 (2021). "Government fails to act neutrally when

it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 533. So a law is not neutral if its "object" is religious exercise. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 535 (1993). And a law is not generally applicable if it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (cleaned up).

Here, the Georgia student aid religious exclusion and its application lack neutrality because they "target[] religious conduct for distinctive treatment." *Lukumi*, 508 U.S. at 534. The exclusion targets religious conduct by facially excluding schools that constitute "school[s] or college[s] of theology or divinity." And in enforcing the exclusion, Defendants target religious conduct because their "object" is to exclude applicants that are too religious while approving less religious applicants. The exclusion thus creates a "religious gerrymander." *Id.* at 535. Defendants have approved secular and more favored religious schools to participate in Georgia student aid programs, but they have excluded Luther Rice because they consider it overly religious. Steinhilber Decl. ¶ 45.

The exclusion and its enforcement are also not generally applicable. Because Georgia law does not define "school or college of theology or divinity," State officials have unfettered discretion "to grant exemptions based on the

15

circumstances underlying each application." *Fulton*, 593 U.S. at 534. This "mere existence of government discretion is enough to render a policy not generally applicable." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685 (9th Cir. 2023). And the "very fact that [the exclusion] require[s] a case-by-case analysis is antithetical to a generally applicable policy." *Id.* at 688.

With no governing definition for "school or college of theology or divinity," Defendants can, on a case-by-case basis, "decide which reasons for not complying with [the statute] are worthy of solicitude." *Fulton*, 593 U.S. at 537. State officials have found that other religious schools are not "schools of theology or divinity," even though they offer religious undergraduate degrees and have religious missions like Luther Rice. But in Luther Rice's case, even though Luther Rice otherwise meets the statutory requirements for approved schools and offers more secular than religious undergraduate degree programs, State officials considered Luther Rice a "school of theology or divinity" and would not grant the school an exemption. What's more, even though the student aid programs fund only undergraduate students, State officials looked at the Luther Rice "institution as a whole" to find that the school does not qualify for Georgia student aid programs. VC, Ex. 8 at 2.

The Georgia student aid religious exclusion thus allows State officials to apply the exclusion case-by-case based on their own judgment of what

constitutes a "school or college of theology or divinity." This ability to make individual assessments and exemptions destroys general applicability and triggers strict scrutiny. *Fulton*, 593 U.S. at 535, 537.

## B. Defendants' actions further trigger strict scrutiny under both Religion Clauses.

Defendants' actions also trigger strict scrutiny under both the Establishment and Free Exercise Clauses for two reasons: (1) Defendants inquired into and subjectively judged Luther Rice's religiosity when determining whether it qualified for state benefits, and (2) Defendants favored certain religious organizations over Luther Rice.

First, under the Establishment Clause, a state cannot "troll[] through a person's or institution's religious beliefs" as a condition to receiving government benefits. *Mitchell v. Helms*, 530 U.S. 793, 828 (2000). In *Colorado Christian University v. Weaver*, 534 F.3d 1245 (10th Cir. 2008), the Tenth Circuit found that a Colorado scholarship program's exclusion of certain religious schools violated the Establishment Clause. The program provided scholarships to eligible students who attended any accredited Colorado college, except for colleges that the state considered "pervasively sectarian." *Id.* at 1250. The court found that the exclusion was "fraught with entanglement problems" because, in assessing whether a school was "pervasively sectarian," officials had to review the religiosity of a school's

17

"religious education curriculum" and "policies and decisions." *Id.* at 1261–63.
And the state "insist[ed] on second-guessing an institution's characterization
of its own religious nature." *Id.* at 1266.

Similarly here, Defendants have subjected Luther Rice to
"governmental monitoring or second-guessing of [its] religious beliefs and
practices ... as a basis for ... exclusion from benefits." *Id.* at 1261. As
Defendants admitted, they reviewed Luther Rice's degree programs and
course offerings, and their "relationship to the school's religious mission."
*NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979). And then they
concluded that the school constitutes a "school of theology or divinity"
because "most of its offerings [are] religious based and non-religious degrees
[are] *substantially intertwined* with the school's religious mission." VC, Ex. 8
at 2 (emphasis added). Such an "inquiry into the recipient's religious views ...
is not only unnecessary but also offensive." *Mitchell*, 530 U.S. at 828. "[T]he
very process of inquiry" invokes strict scrutiny. *Catholic Bishop of Chi.*, 440
U.S. at 502.

And Defendants "placed [Luther Rice] in the position of trying to
disprove [the] religious content in [its courses and programs]" and forced the
school to dispute with Defendants "about what does or does not have religious
meaning." *New York v. Cathedral Acad.*, 434 U.S. 125, 132–33 (1977). In
trying to become an approved school, Luther Rice explained to State officials

that the exclusion does not apply to Luther Rice, emphasizing that two of its three undergraduate degrees are general studies and psychology. Steinhilber Decl. ¶¶ 31–37. But the State thought it knew better and disagreed. *Id.* Such a dispute "touches the very core of the constitutional guarantee against religious establishment." *Cathedral Acad.*, 434 U.S. at 133.

Defendants' inquiry into and dispute over Luther Rice's religiosity thus constituted "excessive governmental entanglement" with the schools' religious views and exercise. *Catholic Bishop of Chi.*, 440 U.S. at 501.

Second, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). And that neutrality requirement is "inextricably connected with the continuing vitality of the Free Exercise Clause." *Id.* at 245. But here, Defendants interpret their student aid religious exclusion in a way that favors certain religious institutions over others. "By giving scholarship money to students who attend religious—but not [overly religious]—universities, [the State] necessarily and explicitly discriminates among religious institutions, extending scholarships to students at some religious institutions, but not those deemed [a school or college of theology or divinity] by governmental officials." *Co. Christian Univ.*, 534 F.3d at 1258. Doing so triggers strict scrutiny under both Religion Clauses.

19

**C.    Defendants fail strict scrutiny.**

Defendants' actions cannot survive strict scrutiny. To do so, the actions "must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Carson*, 596 U.S. at 780 (cleaned up). Defendants fail both prongs.

First, Defendants lack a compelling interest in making Luther Rice choose between its religious character and exercise and participating in Georgia student aid programs. Such government action "that targets religious conduct for distinctive treatment will survive strict scrutiny only in rare cases." *Id.* at 781 (cleaned up).

Defendants cannot claim any Establishment Clause interest because "neutral benefit program[s] in which public funds flow to religious organizations through the independent choices of private benefit recipients," like the Georgia student aid programs, "do[] not offend the Establishment Clause." *Id.* Indeed, far from establishing a religion, Defendants' actions actually violated the Establishment Clause by favoring certain religious institutions over others and entangling the State in religious matters. And "an interest in separating church and state more fiercely than the [Establishment Clause] cannot qualify as compelling in the face of the infringement of free exercise." *Id.* (cleaned up).

20

Defendants also cannot claim any compelling interest in not funding education for the clergy under the Supreme Court's holding in *Locke v. Davey*, 540 U.S. 712 (2004). That case does not allow the State to categorically exclude Luther Rice from Georgia student programs because of its religious character and exercise.[3] In *Locke*, the Court upheld a state statute that withheld scholarships only from students specifically studying to become clergy. *Id.* at 725. The Court limited its holding to allowing states to refuse to fund "the religious training of clergy," given long-standing historical concerns over publicly funding the clergy. *Id.* at 722 n.5, 722–24. So "*Locke* cannot be read beyond its narrow focus on vocational religious degrees to generally authorize the State to exclude religious persons from the enjoyment of public benefits on the basis of their anticipated religious use of the benefits." *Carson*, 596 U.S. at 789.

The Georgia student aid religious exclusion goes far beyond merely preventing the State from using "taxpayer funds to pay for the training of clergy." *Trinity Lutheran*, 582 U.S. at 465. Rather, it categorically excludes from funding any student seeking a degree at Luther Rice, even students with no interest in becoming clergy. In *Locke*, the plaintiff "could use his scholarship to pursue a secular degree at one institution while studying

---

[3] If *Locke* is read differently, *Locke* should be overruled. While this Court cannot do that, Luther Rice preserves this issue for appeal.

21

devotional theology at another. He could also use his scholarship money to attend a religious college and take devotional theology courses there." *Trinity Lutheran*, 582 U.S. at 465 (cleaned up). "The only thing he could not do was use the scholarship to pursue a degree in [devotional theology]." *Id.*; *see also Carson*, 596 U.S. at 788 (In *Locke*, "[f]unds could be and were used for theology courses; only pursuing a 'vocational religious' *degree* was excluded."). To the contrary, here, no Luther Rice undergraduate student can receive Georgia student aid for any Luther Rice course or degree program, not even one of the many Luther Rice students pursuing careers outside the religious vocations. Steinhilber Decl. ¶¶ 11, 12, 40. Nor can any student take dual enrollment courses at Luther Rice, even though the State limits its Dual Enrollment program to secular courses. *Id.* ¶ 40.

What's more, in *Locke*, the Court noted that "[t]he institution, rather than the State, determine[d] whether the student's major is devotional." 540 U.S. at 717. "This avoided the [Establishment Clause] intrusiveness problem; the State made no contentious religious judgments, but simply deferred to the self-evaluation of the affected institutions." *Co. Christian Univ.*, 534 F.3d at 1266. But here, Defendants have unfettered discretion to assess a school's religiosity and decide which schools they consider too religious to participate in Georgia student aid programs.

22

Second, the exclusion and its enforcement are not narrowly tailored. Rather than furthering any interest, the exclusion defeats Georgia's goals to "improve the higher educational opportunities of [Georgia] citizens and persons," OGC § 20-3-231, and to encourage Georgia students to attend private schools in the State, *id.* § 20-3-410. To achieve such goals, Defendants should permit *more* schools to participate, not exclude some because of their religious character and exercise.

## II. Luther Rice satisfies the other preliminary injunction factors.

Luther Rice meets the remaining three preliminary injunction factors. "Regarding irreparable injury, it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (cleaned up). Luther Rice thus suffers an irreparable injury because, as explained above, excluding Luther Rice from Georgia student aid programs based on its religious character and exercise constitutes an "ongoing violation of the First Amendment." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017).

Besides the constitutional violation, the school will continue to face real, practical harm absent an injunction. The school and its students face a choice between maintaining their religious character and exercise and receiving Georgia student aid. Luther Rice students are missing out on much

23

needed financial aid. Steinhilber Decl. ¶¶ 52, 55; Alexander Decl. ¶ 19; Artis Decl. ¶ 6. And Luther Rice has lost and will continue to lose students who need Georgia financial aid to cover tuition costs thus hurting the school's educational goals, ministry opportunities, and ability to serve the financial interests of its students. Steinhilber Decl. ¶¶ 56, 57, 59, 60; Griffeth Decl. ¶¶ 6, 11; Artis Decl. ¶ 15. High school students are now deciding what colleges they will attend for the 2025-2026 academic year and Luther Rice is actively trying to recruit such students. Steinhilber Decl. ¶ 58. But without an injunction, Luther Rice will have to tell such students that they cannot receive Georgia student aid if they attend Luther Rice, leading to fewer enrollments. *Id.*

Luther Rice also meets the third and fourth preliminary-injunction requirements because the balance of equities weighs in Luther Rice's favor and the requested injunction will serve rather than harm the public interest.

For the State, "neither the government nor the public has any legitimate interest in enforcing an unconstitutional [law]." *Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020). To the contrary, "it is in the public interest to protect First Amendment rights." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024). As the Supreme Court has recognized, "[t]he First Amendment, in particular, serves significant societal interests." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978). Also,

the requested injunction will not significantly burden the State financially because Luther Rice is the only excluded nonprofit school that otherwise meets the requirements for Georgia student aid programs. Steinhilber Dec. ¶ 41.

As for harm to Luther Rice, "[a] temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (cleaned up). Luther Rice and its students are irreparably harmed each day they face a choice between their First Amendment rights and receiving much needed financial aid.

Luther Rice thus satisfies all preliminary injunction requirements.

## CONCLUSION

For these reasons, the Court should grant the motion and issue the requested preliminary injunction.

Respectfully submitted this 18th day of October 2024,

s/ *Andrea Dill*
Andrea Dill*
DC Bar No. 1719500
**ALLIANCE DEFENDING FREEDOM**
440 1st Street NW
Washington DC 20001
Telephone: (202) 393-8690
Email: adill@adflegal.org

David Cortman
GA Bar No. 188810
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road, NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

Ryan Tucker*
AZ Bar No. 034382
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Email: rtucker@adflegal.org

***Counsel for Plaintiff***
**Admitted pro hac vice*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this document was prepared in Century Schoolbook 13-point font and fully complies with Local Rules 5.1C and 7.1D.

s/*Andrea Dill*
Andrea Dill

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2024, I electronically filed the

foregoing with the Clerk of the Court for the United States District Court

Northern District of Georgia by using the CM/ECF system. I certify that that

this document, along with the summons and complaint, will be served upon

the following defendants via civil process server.

Lynne Riley
President of the Georgia Student Finance Commission and Georgia Student
Finance Authority
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Anna Chafin
1st Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

F. Faison Middleton, IV
2nd Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Linda McWhorter
3rd Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place
Tucker, GA 30084 US

Linwood H. Thompson, IV

4th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Dr. Narasimhulu Neelagaru
5th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

David Perez
6th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Ed Pease
7th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Dr. Sarah Beck Hawthorne
8th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

James C. Weidner
9th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place
Tucker, GA 30084 US

Linwood H. Thompson, IV

4th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Dr. Narasimhulu Neelagaru
5th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

David Perez
6th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Ed Pease
7th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

Dr. Sarah Beck Hawthorne
8th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place Tucker,
GA 30084 US

James C. Weidner
9th Congressional District Commissioner
Georgia Student Finance Commission and Georgia Student Finance
Authority
2082 East Exchange Place
Tucker, GA 30084 US

s/*Andrea Dill*
Andrea Dill